UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD MICHAEL N., <br><br> Plaintiff, <br><br> v. <br><br> MARTIN O'MALLEY, <br> Commissioner of Social Security, <br><br> Defendant. | Case No.: 23-CV-1456-KSC <br><br> **ORDER ON JOINT MOTION FOR JUDICIAL REVIEW, REVERSING DENIAL OF BENEFITS, AND REMANDING FOR FURTHER PROCEEDINGS** <br><br> **[DKT. NO. 11]** |

## I.   INTRODUCTION

On August 8, 2023, plaintiff Richard Michael N. filed a Complaint seeking judicial review of a decision by the Commissioner of Social Security denying his application for disability insurance benefits. Dkt. No. 1. On February 29, 2024, the parties filed a Joint Motion for Judicial Review of the administrative law judge's ("ALJ") decision. Dkt. No. 11. For the reasons set forth herein, the Court reverses the denial of benefits and remands the case for further proceedings.

//

//

//

## II. PROCEDURAL BACKGROUND

On April 12, 2021, plaintiff filed an application for disability insurance benefits alleging disability beginning on March 22, 2021. AR 165–68.[1]

The Commissioner denied plaintiff's claim on July 9, 2021 (AR 91–95), and on reconsideration on August 30, 2021 (AR 102–07). On October 12, 2021, plaintiff requested a hearing before an ALJ (AR 108–09), which was held on June 14, 2022 (AR 30–61).

On June 30, 2022, the ALJ issued a decision denying plaintiff's claim. AR 10–29. On June 26, 2023, the Appeals Council denied plaintiff's request for review, rendering the ALJ's decision as the Commissioner's final decision. AR 1–6; 42 U.S.C. § 405(h). Plaintiff then filed this case. Dkt. No. 1.

## III. SUMMARY OF THE ALJ'S FINDINGS

The ALJ's denial followed the five-step sequential evaluation process. *See* 20 C.F.R. § 404.1520 *et seq.*; AR 18–35.  At step one, the ALJ found plaintiff had not engaged in substantial gainful activity since March 22, 2021, his alleged onset date. AR 16.

At step two, the ALJ found plaintiff had the following medically determinable severe impairments: lumbar degenerative disc disease with S1 left radiculopathy; thoracic degenerative disc disease; cervical spondylosis with chronic bilateral cervical paraspinal and trapezius myofascial strain/sprain; and diabetes mellitus with diabetic peripheral neuropathy. *Id.*

At step three, the ALJ found plaintiff did not have an impairment or combination of impairments that met or medically equaled those in the Commissioner's Listing of Impairments. AR 17–18.

---

[1] "AR" refers to the Administrative Record lodged on October 6, 2023. Dkt. No. 7. The Court's citations to the AR use the page references on the original document rather than the page numbers designated by the Court's case management/electronic case filing ("CM/ECF") system. For all other documents, the Court's citations are to the page numbers affixed by the CM/ECF system.

1  Before proceeding to step four, the ALJ determined plaintiff had the residual
2  functional capacity ("RFC")

> to perform light work as defined in 20 CFR 404.1567(b) except: he can perform lifting and carrying 20 pounds occasionally and 10 pounds frequently; he can sit 6 hours and stand and/or walk 6 hours in an 8-hour day, but he also needs the ability to sit for 15 minutes after every 2 hours of standing or walking; he can frequently handle, finger, and feel bilaterally; he cannot climb ladders, ropes, or scaffolds, but can occasionally perform all other postural activities; he can occasionally do overhead reaching bilaterally; he can occasionally perform operation of foot pedals with his left lower extremity; he must avoid concentrated exposure to extreme cold, vibrations, and hazards such as unprotected heights and work around dangerous moving machinery.

AR 18. In reaching this conclusion, the ALJ concluded the opinion of plaintiff's treating physician, Brian Huizar, was "not very persuasive as it is only partially consistent with the totality of the evidence, including plaintiff's testimony." AR 23.

At step four, the ALJ concluded plaintiff "is capable of performing past relevant work as a concrete block supervisor [Dictionary of Occupational Titles ("DOT")] 579.130-014, light as generally performed but heavy as actually performed SVP 7)." *Id*.

The ALJ, therefore, did not proceed to step five, and concluded plaintiff was not disabled. AR 25.

### IV.  STANDARD OF REVIEW

The Court reviews the ALJ's decision to determine if it is supported by substantial evidence and whether the ALJ applied the proper legal standards. 42 U.S.C. § 405(g); *DeLorme v. Sullivan*, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is "more than a mere scintilla but less than a preponderance." *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

The Court "must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Ghanim v. Colvin*, 763 F.3d 1154, 1160 (9th Cir. 2014) (internal quotation omitted). "[I]f evidence exists to support more than

one rational interpretation, [the Court] must defer to the Commissioner's decision." *Batson v Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004).

## V. DISCUSSION

Plaintiff contends the ALJ committed two errors:

(1) his conclusion at step four that plaintiff could perform past relevant work is not supported by substantial evidence and rests on legal error (Dkt. No. 11 at 5–16); and

(2) he failed to properly consider Dr. Huizar's medical opinion (*Id.* at 17–24). The Court addresses each of these claimed errors in turn.

**A. Step Four**

Plaintiff first contends "the ALJ failed to consider that [plaintiff] actually performed a composite job having no DOT counterpart." Dkt. No. 11 at 6.

*1. Waiver*

Defendant argues "plaintiff has waived his composite job argument because he did not raise this issue at the administrative level." *citing Hurtado v. Berryhill*, 749 F. App'x 663, 664 (9th Cir. 2019).

Unlike *Hurtado*, plaintiff did not wait until his appeal to present evidence of composite work or argue the ALJ misclassified his prior work. During the hearing, plaintiff testified that due to a chronic shortage of trained personnel and the need to cover for breaks and vacation time, he performed manual labor and worked "the floor" eight hours a day "running the machines, . . . running the mixers, . . . and running the cue." AR 58, 215. Plaintiff's counsel, then questioned the vocational expert whether the physical labor plaintiff performed in his prior job suggested it was more akin to a front-line supervisorial job, requiring heavier exertion, as opposed to a managerial position requiring lighter exertion. AR 53–56. The ALJ ended counsel's line of questioning, inviting counsel to "take that up with the Appeals Council," which plaintiff then did. AR 56, 253–56. Plaintiff did not, therefore, waive these arguments. *See e.g. Hurtado*, 749 F. App'x at 664 (finding waiver because plaintiff did not raise these arguments during the Commissioner's review,

"presented [them] for the first time in district court," and during the ALJ hearing he "conceded that he worked as a file clerk and performed file clerk duties," . . . did not "present any evidence [he worked a composite job], or challenge the vocational expert's testimony.")

### 2. *The ALJ's Error*

The ALJ concluded plaintiff "is capable of performing past relevant work as a concrete block supervisor (DOT 579.130-014, light as generally performed but heavy as actually performed SVP 7)." AR 24.

"[C]omposite jobs have significant elements of two or more occupations and, as such, have no counterpart in the DOT." SSR 82-61. A claimant's past relevant work "may be a composite job if it takes multiple DOT occupations to locate the main duties of the [past relevant work] as described by the claimant." Program Operations Manual System ("POMS") 25005.020(B). Because a composite job has no single DOT counterpart, the job must be evaluated as actually performed rather than as generally performed. SSR 82-61 (composite jobs "will be evaluated according to the particular facts of each individual case").

A particular job does not become composite merely because, as actually performed, the job included tasks not generally performed in such a job. *See, e.g., Torres v. Saul*, No. 20CV0683-KBM, 2021 WL 2859683, at *6 (D. N.M. July 8, 2021) ("that plaintiff described her work as she actually performed the jobs, as opposed to how they are generally performed, does not transform them into composite jobs" (citations and quotations omitted)). Even so, it is error to define a claimant's past relevant work according to the "least demanding aspect" of a past job when that aspect "was something the claimant did less than half the time." *Stacy v. Colvin*, 825 F.3d 563, 570 (9th Cir. 2016).

Here, the ALJ's conclusion plaintiff "is capable of performing past relevant work as a concrete block supervisor (DOT 579.130-014)" is not supported by substantial evidence.

Plaintiff typically worked 10 or more hours a day, out of which he spent an hour and a half to two hours at most performing supervisory/administrative duties in his office. AR

41–42. He described performing tasks during this portion of the workday that are consistent with DOT code 579.130-014.[2] *Id.*

Plaintiff spent the remainder of his workday, about 8 hours, on "the floor" performing the same type of work as the staff of nine to ten workers he supervised. AR 40, 42, 215. This portion of his job involved lifting and carrying 50 pounds or more frequently (1/3–2/3 of the workday) and at times up to 100 lbs. or more. AR 206; *see also* AR 215–16 (describing "running machines such as mixers-cubers-block machines, forklifts," . . . "picking up [50 to 100 pound] mold parts," . . . lifting 50 pound color bags over his shoulder, lifting and stacking 35-40 pound blocks, and lifting 40 pound pallets and machine parts.) Plaintiff performed these tasks to relieve staff for breaks, lunches, vacation, and when the company was shorthanded which was "most of the time because we could not find anybody that wanted to do this type of work." AR 40, 215. Plaintiff described how he needed to "get[] in there and run[] and help[] in all aspects throughout the day" to complete production orders. AR 40–41.

This hands-on manual labor is inconsistent with the supervisorial functions of DOT code 579.130-014.

Defendant argues the ALJ "reasonably found plaintiff's 'hands-on approach' did not change his position from that of a manager to a line worker." Dkt. No. 11 at 15. The ALJ's conclusion suggests plaintiff's manual labor was incidental and not required, whereas plaintiff's description of the job suggests otherwise. *See* AR 40–41, 206, 215–16. Because plaintiff's description suggests he performed significant manual labor, including lifting 50 pounds of more 1/3–2/3 of the workday (AR 206), the ALJ erred in not developing the

---

[2] The DOT describes the functions of 579.130-014 (supervisor, concrete block plant) as:

> Supervises and coordinates activities of workers engaged in mixing concrete, in setting up, maintaining, and operating concrete-block-making machines and equipment, and in curing and storing blocks. Performs duties as described under SUPERVISOR (any industry) Master Title.

record further and considering whether plaintiff's prior work was a composite job. *See Carmickle v. Comm'r, Soc. Sec. Admin.,* 533 F.3d 1155, 1166 (9th Cir. 2008) (holding that the ALJ erred when it categorized the claimant's work as "a purely supervisory position" when only twenty percent of his duties involved supervising employees and the remainder involved significant manual labor); *Carroll v. Kijakazi*, No. 23CV00158, 2023 WL 8878552, at *6 (E.D. Cal. Dec. 22, 2023), report and recommendation adopted, No. 23CV00158, 2024 WL 457580 (E.D. Cal. Feb. 6, 2024) ("Given the evidence that plaintiff had more physically demanding job duties than described in the DOT listing for filter assembler, the ALJ erred by not considering this and/or developing the record on this issue."); *Jesus P. v. Berryhill*, No. 17CV01633-JPR, 2019 WL 134552 at *5 (C.D. Cal. Jan. 8, 2019) ("The composite-job analysis applies only when 'the least demanding aspect' of the job 'was something the claimant did less than half the time.'")

An error is harmless "when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *See Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008).

Here, however, the ALJ's failure to consider whether plaintiff worked a composite job could materially affect the step four analysis. "[A]n ALJ is not permitted to evaluate a composite job 'as generally performed in the national economy.'" *Maricela R. v. Kijakazi*, No. 20CV06625, 2022 WL 617124, at *5 (N.D. Cal. Mar. 2, 2022) (quoting POMS § 25005.020(B)). Instead the ALJ must "consider[] only whether the claimant can perform the work as actually performed," *Carroll v. Kijakazi*, No. 23CV00158, 2023 WL 8878552, at *5 (E.D. Cal. Dec. 22, 2023) (cleaned up). Because the ALJ found plaintiff has the RFC to perform light work (AR 18), and that he could perform the concrete block plant supervisor job only as generally performed, but not as actually performed (AR 23), a composite job finding could alter the outcome of step four. Thus, the ALJ's error is not harmless.

The ALJ's step-four error is also not harmless because he did not proceed to step five. The ALJ "cannot make such a determination at [step five] without making findings

of fact as to the transferability of Claimant's skills," which the ALJ did not do here. *McCullough v. O'Malley*, No. 23CV00298, 2024 WL 1209479, at *8 (D. Haw. Mar. 21, 2024 (*citing Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1223–26 (9th Cir. 2009)) (holding a misclassification of past relevant work at step four cannot be harmless where the ALJ made no findings on whether claimant has transferable skills).

### B. Dr. Huizar's Opinion

Plaintiff next argues the ALJ's stated reasons for finding Dr. Huizar's medical opinion "not very persuasive" are not supported by substantial evidence. Dkt. No. 11 at 17–21.

Dr. Huizar treated plaintiff every three months on average, dating back to October 2018. AR 585. He provided two statements regarding his opinions of plaintiff's medical impairments and abilities. AR 585–87, 638–40. In August 2021, Dr. Huizar opined that in an eight-hour workday, plaintiff could sit four hours, stand three hours, and walk three hours. AR 585. Dr. Huizar also opined plaintiff could frequently lift/carry less than 10 pounds, occasionally lift/carry 10 pounds, occasionally lift/carry 20 pounds, and never lift/carry 50 pounds or more. AR 586. Dr. Huizar opined plaintiff would be absent from work four or more times per month due to his impairments or treatment. AR 587. In May 2022, Dr. Huizar opined plaintiff had the same limitations. AR 638–640.

Plaintiff filed his claim after March 27, 2017; therefore, the 2017 amendments governing medical opinions contained in 20 C.F.R. § 404.1520c apply. *Woods v. Kijakazi*, 32 F.4th 785, 789 (9th Cir. 2022). Under the 2017 amendments, the Social Security Administration ("SSA") "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from . . . medical sources." 20 C.F.R. § 404.1520c(a).

The 2017 amendments require evaluation of the persuasiveness of medical opinions according to the following factors: supportability, consistency, relationship with the claimant, specialization, and other factors, such as the medical source's familiarity with other evidence and the disability program's policies and evidentiary requirements.

20 C.F.R. § 404.1520c(c). In assessing medical opinions, ALJs must explain how they "considered the supportability and consistency factors" and "may, but are not required to, explain how [they] considered the [other] factors . . . as appropriate." *Id.* § 404.1520c(b)(2).

Under the "supportability" factor, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support [the source's] medical opinion(s) . . . the more persuasive the medical opinions will be." *Id.* § 404.1520c(c)(1).

"Consistency" is the extent to which an opinion is consistent "with the evidence from other medical sources and nonmedical sources." *Id.* § 404.1520c(c)(2).

"For claims subject to the new regulations, . . . an ALJ's decision, including the decision to discredit any medical opinion, must simply be supported by substantial evidence." *Woods*, 32 F.4th at 787.

Plaintiff argues the ALJ's finding "Dr. Huizar's opinion is not very persuasive as it is only partially consistent with the totality of the evidence, including [plaintiff's] testimony," is not supported by substantial evidence because, the ALJ did not acknowledge Dr. Huizar opined plaintiff can lift and carry 20 pounds occasionally. Dkt. No. 11 at 18. Whereas the ALJ alleged plaintiff "testified to being able to do more than [Dr. Huizar's] opinion suggests," plaintiff posits his testimony is consistent with Dr. Huizar's opinions, noting specifically the 20 pound lifting restriction opinion is consistent with plaintiff's testimony he can "lift about 20-25 pounds before straining [his] back." *Id.* at 19.

Although the ALJ did not discuss Dr. Huizar's 20 pound lifting restriction, the ALJ's decision contains a fulsome discussion of the record as a whole and relies on substantial additional evidence that is inconsistent with the limitations assigned by Dr. Huizar. AR 22–23. For example, the ALJ also explained he "[did] not find the number of absences to be supported (AR 23) and, in fact, there is no evidence to support Dr. Huizar's opinion plaintiff would be absent from work four or more times per month.

The ALJ also observed Dr. Huizar's opinions were only "somewhat consistent" with "more recent treatment records, where examination of the cervical and thoracic spine

1  demonstrated limited range of motion and positive facet loading and spurling signs; no
2  tenderness or palpable trigger points; and no cervical or lumbar lordosis. Examination of
3  the lumbosacral spine showed no tenderness or palpable trigger points [and plaintiff] also
4  demonstrated normal gait and normal bulk, tone, and strength in the extremities." AR 22–
5  23, *citing* AR 648, 660, 661; *see also* AR 513, 517, 523, 529, 537, 648, 661, and 673
6  (supporting treatment records). He then concluded "the opinion [overestimates] the
7  severity of [plaintiff's] limitations, failing to acknowledge . . . improvement over time and
8  with treatment." AR 23, citing AR 588 (on February 17, 2022, plaintiff informed Dr.
9  Huizar "he [was] not having any pain" at that time); *see also* AR 511 (tramadol helps with
10 neck and back pain), AR 646 and 659 ("Pt reports medications provide good relief of pain
11 and enable them to perform ADL's with no adverse reactions").

12 The ALJ further noted Dr. Huizar's opinions were only "somewhat supported" by
13 plaintiff's "complaints of neck, thoracic, and lower back pain with numbness and tingling
14 in the legs; lumbosacral radiculopathy with a lumbar disc bulge, T9-11 syrinx; and cervical
15 spine disc bulges." AR 22, citing AR 585, 638.

16 The ALJ specifically discussed and evaluated the claimed limitations for
17 supportability and consistency with the record and found them neither fully supported by
18 nor consistent with the record. AR 22–23. The Court finds the ALJ's discounting of Dr.
19 Huizar's opinion was consistent with the law and supported by substantial evidence in the
20 record. *See Woods*, 32 F.4th at 793; *Jacqueline D. v. Comm'r of Soc. Sec.*, No. 20-cv-0365-
21 TOR, 2021 WL 4083408, at *7 (E.D. Wash. Sept. 8, 2021) ("The ALJ's conclusion that
22 [the physician's] opinion is unpersuasive is supported by substantial evidence and is
23 consistent with Ninth Circuit law that a medical opinion may be rejected by the ALJ if it is
24 brief, conclusory, or inadequately supported.") (*citing Bray*, 554 F.3d at 1228).

25 **VI.   CONCLUSION**

26 Remand is warranted where additional administrative proceedings could remedy
27 defects in the decision. *Kail v. Heckler*, 722 F.2d 1496, 1497 (9th Cir. 1984). The Court
28 believes this is a case where additional administrative proceedings could remedy the

defects in the ALJ's decision.

For the foregoing reasons, the Court reverses the denial of benefits and remands this matter for further administrative proceedings consistent with this Order.

**IT IS SO ORDERED.**

Dated: September 6, 2024

Hon. Karen S. Crawford
United States Magistrate Judge